593 A.2d 436

**Gilbert B. BILLER**

v.

**Edward ZIEGLER, et al.**

**Appeal of WILLIGEROD AND MacAVOY, P.C.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Filed June 27, 1991.

1

2

Theodore A. Adler, Harrisburg, for appellants.

Arthur T. McDermott, Carlisle, for appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

CERCONE, Judge.

This is an appeal from a judgment entered in favor of plaintiff/appellee following a jury trial. We vacate and remand with directives.

The events underlying the instant appeal concern a contract to build a house for Mr. and Mrs. James Wright.[1] The facts, as found by the trial court, are as follows. Defendant/appellant Willigerod and MacAvoy, P.C., a firm of architects, was engaged by the Wrights to oversee the

1. The Wrights are not parties to this litigation.

construction of their house. Defendant Monroe Construction Company, whose principals were Edward Ziegler and Rick Marchi, acted as general contractor.[2] Plaintiff/appellee, Gilbert B. Biller, was engaged to perform the masonry work on the structure. However, Mr. Biller did not enter into a written contract with any of the defendants to the underlying suit as his practice is to work on a "handshake basis."

In November of 1985, appellee Biller became concerned that Monroe Construction was about to declare bankruptcy while owing him approximately $9,000 for work done on other jobs. In consequence, Mr. Biller met with Mr. MacAvoy, one of the architects in the firm employed by the Wrights, and explained that he would not continue working on the Wright's house as he could not take the risk of losing payment for the work. Mr. MacAvoy assured appellee that he would receive payment by Thanksgiving. When the funds were not forthcoming, appellee pulled his crew off the Wright's job site and a different masonry subcontractor was employed to complete the project.

Appellee filed his original complaint *ex contractu* in 1986 seeking damages for unpaid work from Messrs. Ziegler and Marchi of Monroe Construction Co., Willigerod and MacAvoy, P.C., as well as from Mr. William MacAvoy individually. The first trial resulted in a non-suit which was reversed by a decision of this court. *Biller v. Ziegler, et al.*, 383 Pa.Super. 660, 550 A.2d 246 (1988). In June of 1989, a jury awarded the sum of $16,000.00 plus "legal costs" to appellee and against appellant Willigerod and MacAvoy, P.C. The lower court denied post-trial motions filed by the appellant, and a notice of appeal to the Superior Court was timely filed. Judgment was subsequently entered on the verdict.

The appellant architectural firm raises the following issues for our consideration:

**2.** Although named as defendants below, neither Monroe Construction Company nor its principals are parties to the instant appeal.

[1]. Where a master is joined with its servant in an action based wholly upon the servant's conduct, can the master be held liable when the action against the servant has been dismissed?

[2]. Was the oral promise of the individual defendant MacAvoy to guarantee the debt of another enforceable?

[3]. Was the promise of the individual defendant MacAvoy enforceable as an original contract?

[4]. Can a jury find an agent to have apparent authority to act on behalf of the principal when no evidence of such is presented?

[5]. Were the damages awarded by the jury consistent with the evidence presented by the [appellee]?

We shall discuss these claims sequentially. However, as the first and fourth issues involve the same resolution, we shall address these claims together.

Appellant's first and fourth contentions are that the jury made a fundamental error in finding the architectural firm liable while determining that William MacAvoy, the architect in the firm who guaranteed payment to Mr. Biller, was not personally liable. The arguments advanced by appellant focus on the master/servant relationship in torts law, the doctrine of vicarious liability, and the law of agency. However, this question must be resolved under the former Professional Corporation Law, Act of July 9, 1970, P.L. 461, No. 160 §§ 1–14, which directly addresses the topic.[3]

A professional corporation may lawfully render professional services only through officers, employees or agents who are licensed persons. Act of July 9, 1970, P.L. 461, No. 160 § 12, 15 P.S. § 3912 (repealed). *See* 15 Pa.C.S.A.

---

**3.** The former Professional Corporation Law was repealed by the Act of December 21, 1988, P.L. 1444, No. 177, § 302, effective October 1, 1989. As the Committee Comment indicates, the current Chapter 29 of the Business Corporations Law is basically a reenactment of the former Professional Corporation Law. For ease of reference and because the language of the prior enactment is virtually identical to the current Professional Corporation Law codified at 15 Pa.C.S.A. § 2901 *et seq.,* citation will be made to both the former and current provisions.

§ 2924(a) (current law). An individual officer, shareholder, employee or agent of a professional corporation is personally and fully liable and accountable for his or her acts *only* to the person for whom the professional services were being rendered. Act of July 9, 1970, P.L. 461, No. 160 § 13, 15 P.S. § 2913(b) (repealed) (emphasis added). *See* 15 Pa. C.S.A. § 2925(b) (current law). However, the professional corporation itself shall be liable up to the full value of its property for the acts of any of its officers, shareholders, employees or agents while they are engaged on behalf of the corporation in rendering professional services. Act of July 9, 1970, P.L. 461, No. 160 § 13, 15 P.S. § 2913(b) (repealed) (emphasis added). *See* 15 Pa.C.S.A. § 2925(b) (current law). We note that on its face, this second provision does not limit liability only to the person for whom the professional services were performed, *i.e.*, there is no privity requirement in the second provision.

█ As the lower court has correctly summarized, the record substantiates factual findings that Willigerod and MacAvoy, P.C. is a professional corporation in which William MacAvoy is a named professional participant, *i.e.*, "a licensed architect." The appellant has conceded that Mr. MacAvoy is a principal in the firm. Specifically, the evidence presented to the lower court shows that William MacAvoy is the "MacAvoy" named in the architectural firm's title. The record also bears out the lower court's statement that throughout the trial, few distinctions were made by either side between Mr. William MacAvoy and the professional corporation of Willigerod and MacAvoy. Further, the record discloses that Willigerod and MacAvoy, P.C. was engaged to perform professional services for the home builders and not for appellee. We conclude that appellee was not in privity with the firm, and that he was not negotiating with an agent of the firm. Rather, appellee dealt directly with appellant's named principal, William MacAvoy.

█ It is virtually hornbook law that a corporation is a legal fiction which can act only through its officers, di-

rectors and other agents. *Daniel Adams Associates, Inc. v. Rimbach Pub., Inc.*, 360 Pa.Super. 72, 79, 519 A.2d 997, 1000 (1987), *allocatur denied*, 517 Pa. 597, 535 A.2d 1056 and 517 Pa. 599, 535 A.2d 1057 (1987). A corporation's liability on contracts, even those made by mere agents, is not limited to such acts of the agents as are expressly authorized or necessarily implied, and extends to contracts negotiated by an agent acting within the apparent scope of his authority. *Simon v. H.K. Porter Co.*, 407 Pa. 359, 364, 180 A.2d 227, 229–30 (1962). We have already endorsed the lower court's determination that William MacAvoy was not simply an agent with apparent authority to represent appellant, but was a named principal in the architectural firm.

Appellant has never denied that Mr. MacAvoy exercises managerial authority at Willigerod and MacAvoy, P.C. *See Lokay v. Lehigh Valley Co-op Farmers, Inc.*, 342 Pa.Super. 89, 492 A.2d 405 (1985) (corporation could not escape consequences of its officer's acts where it did not deny his managerial authority). Moreover, it would be contrary to our law if we were to hold that a professional corporation is not liable on contracts made by a named principal acting in his professional capacity and representing his firm merely because he has not been shown to be an "agent" of the corporation. In consideration of these circumstances and the foregoing provisions of the Professional Corporation Law, we are unable to conclude that the jury erred in absolving Mr. MacAvoy of personal responsibility for the acts he performed under the aegis of Willigerod and MacAvoy, P.C. while finding the architectural firm liable for these same acts.

Appellant's second issue questions whether an oral promise made by William MacAvoy was sufficient to guarantee the debt of another and whether this promise is enforceable. The essence of this claim is that as the guarantee made by Mr. MacAvoy was oral, it is unenforceable under the Pennsylvania Statute of Frauds. Our statutory law states:

**Promise to answer for debt of another**

No action shall be brought whereby to charge any executor or administrator, upon any promise to answer damages out of his own estate, or whereby to charge the defendant, upon any special promise, to answer for the debt or default of another, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him authorized.

33 P.S. § 3 (Act of April 26, 1855, P.L. 308 § 1). However, the Statute of Frauds rule that a promise to answer for the debt of another must be in writing does not apply if the main object of the promisor is to serve his own pecuniary or business purpose. *Acme Equipment Co. v. Allegheny Steel Corp.*, 207 Pa.Super. 436, 438, 217 A.2d 791, 792 (1966). *Accord Leonard v. Martling*, 174 Pa.Super. 206, 210–11, 100 A.2d 484, 486 (1954), *aff'd*, 378 Pa. 339, 106 A.2d 585 (1954). This exception has been called the "leading object" or "main purpose" rule. *Thomas A. Armbruster, Inc. v. Barron*, 341 Pa.Super. 409, 413, 491 A.2d 882, 884 (1985).

 The leading object rule applies whenever a promisor, in order to advance some pecuniary or business purpose of his own, purports to enter into an oral agreement even though that agreement may be in the form of a provision to pay the debt of another. *Id., quoting Goodling v. Simon*, 54 Pa.Super. 125, 127 (1913). *Accord Eastern Wood Products Col. v. Metz*, 370 Pa. 636, 641, 89 A.2d 327, 330 (1952). As the *Armbruster* court explained, where the surety-promisor's main purpose is his own primary or business advantage, the gratuitous or sentimental element often present in suretyship is eliminated. *Thomas A. Armbruster, Inc. v. Barron*, 341 Pa.Super. at 413, 491 A.2d at 884. Thus, there is less need for cautionary or evidentiary formality in the commercial context. *Id.* The determination as to whether a promisor's main purpose for making a guaranty was to serve his own pecuniary or business ends

is for the trier of fact, and will not be reversed absent abuse of discretion. *Id.*, 341 Pa.Superior Ct. at 413–14, 491 A.2d at 884.

Appellant contends that neither William MacAvoy nor the firm of Willigerod and MacAvoy, P.C. had any pecuniary interest in seeing that appellee performed the masonry work on the Wright project. This claim is predicated on the fact their agreement with the Wrights did not condition payment of the architect's fee upon the completion of any particular portion of the work by any particular contractor or sub-contractor. We find this argument to be disingenuous at best.

Mr. MacAvoy's testimony indicates that the firm received partial payment from the Wrights only upon the completion of work specified in a stage payment schedule. N.T. 6/6/89 at 2-24—2-25. According to this testimony, the firm would not be fully paid until the project was completed. The sooner the construction was finished, the sooner payment in full would be rendered. *Id.* Although Willigerod and MacAvoy, P.C. may have had no pecuniary interest in securing the specific services of appellee, the firm certainly had such an interest in facilitating the completion of the masonry work as rapidly as possible. Thus, it was logical and and reasonable for the jury to determine that this pecuniary interest was advanced by encouraging appellee to remain on the job rather than by suspending progress while seeking a different sub-contractor to take over the work.

Our review of the record confirms that there was no abuse of discretion by the fact-finder in concluding that Mr. MacAvoy's oral promise also advanced a business purpose for Willigerod and MacAvoy, P.C. Mr. MacAvoy acknowledged that the reputation of an architect for finishing projects in a timely manner is important. *Id.* at 2-28. Additionally, he stated that fully ninety-five (95) per cent of the firm's business was secured through satisfied customers who recommend the firm to other potential customers. *Id.* Mr. MacAvoy admitted that at the time he made the oral promise to appellee, the Wrights were concerned that the project was moving too slowly and that they wanted the

masonry and brickwork completed before "deep winter" set in. *Id.* at 2–29. The Wrights also wanted the job to be completed as quickly as possible in order to reduce the amount of interest due on their construction loan. *Id.* at 2–8. In light of this testimony, it was reasonable for the jury to conclude that the architectural firm had a business purpose for the oral promise, *i.e.*, to enhance the firm's reputation by finishing the brickwork before winter made completion impossible.

Next, appellant argues that William MacAvoy's promise to guarantee payment to appellee is not enforceable as an original contract. We have already determined that Mr. MacAvoy's promise is enforceable as a collateral agreement excepted from the Statute of Frauds requirements under the leading object or main purpose rule. It was not necessary for the jury to find Willigerod and MacAvoy, P.C. liable under both theories in order for appellee to prevail. In light of our resolution of the collateral agreement claim, we need not further discuss the question of the enforceability of the promise as an original contract.[4]

■ The final claim raised by appellant is that judgment notwithstanding the verdict should have been granted by the lower court because, although the evidence presented at trial could support an award of damages in the amount of $12,445.04, the jury had no basis on which to award appellee

4. We note, however, that the trial court has correctly analyzed the evidence before the jury and their possible conclusion.

It was for the jury to determine if the promise was original or collateral and, if the latter, whether MacAvoy and Willigerod benefitted from Biller's undertaking such that the oral promise escaped the statute of frauds and is enforcable [sic]. The evidence supported either analysis. MacAvoy and Willigerod's promise may be seen as original in that Biller was entitled to the inference that it was the architects' promise alone that induced him to accept the job and begin work. The evidence showed that the architects had some control over the flow of funds for the job and Biller was entitled to the inference that, just as the architects could recommend payment to the general contractor, they could recommend Biller be paid directly.
Slip opinion at 3.

the sum of $16,000 plus legal costs.[5] In reviewing a motion for judgment n.o.v., the facts must be considered in the light most favorable to the party against whom the motion was made. *Kobylinski v. Hipps*, 359 Pa.Super. 549, 553, 519 A.2d 488, 490 (1986). If the law does not permit recovery upon the alleged facts on which the jury may justifiably have relied, a judgment n.o.v. is proper. *Id.* A motion for a new trial should be granted only where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 449, 467 A.2d 615, 618 (1983). The lower court's decision in this regard will not be reversed absent an abuse of discretion. *Id.*

As our analysis has already shown, the evidence presented to the jury demonstrates that appellee is not absolutely barred from all recovery. Thus, it was not an abuse of discretion for the lower court to deny appellant's motions for judgment n.o.v. and for a new trial. Under these circumstances, we agree with the lower court's assessment that a remittitur of the excess jury award is the proper approach to follow. An order of remittitur is a judicial determination that the verdict is excessive as a matter of law. *Nelson v. Keefer*, 451 F.2d 289, 296 n. 15 (3d Cir.1971), *citing Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968). Evidence in the certified record supports, at a minimum, appellee's stated claim in the amount of $13,630.28. N.T. 6/5/89 at 48–98; N.T. 6/6/89 at 2–18—2–23.[6] Consequently we vacate the

5. Conversely, appellee recommends that we treat the excess award as "delay damages." Such an approach is inappropriate, however, because the rule providing for delay damages limits such awards to tort actions for bodily injury, death, or property damage. Pa.R.C.P. No. 238, 42 Pa.C.S.A. As the instant case sounds in contract, there is no authority permitting us to treat the excess award as a grant of delay damages. *See, e.g., Versatile Metals, Inc. v. Union Corp.*, 693 F.Supp. 1563, 1570 (E.D.Pa.1988) (delay damages per se are not available in Pennsylvania for contract actions).

6. The original record, as certified to this court, does not contain the exhibits admitted at trial. Although appellant has included copies of certain exhibits as part of the reproduced record, a paper may not be made part of the record simply by reproducing it. *Dorn v. Stanhope*

judgment docketed April 17, 1990 and remand with the directive that a new judgment be entered awarding to appellee Biller the sum of $13,630.28 plus costs, prejudgment interest, and interest from June 6, 1989, the date of the verdict. *See* 42 Pa.C.S.A. § 8101 (interest on judgments); *Verner v. Shaffer*, 347 Pa.Super. 206, 500 A.2d 479 (1985) (reviewing court has authority to mold verdict by adding pre-judgment interest even where issue was not submitted to jury); *Gold and Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151 (1980) (in contract action, award of pre-judgment interest does not depend upon discretion but is a legal right).

Judgment vacated. Case remanded with directives. Jurisdiction is not retained.

*Steel, Inc.*, 368 Pa.Super. 557, 563 n. 1, 534 A.2d 798, 801 n. 1 (1987), *allocatur denied*, 518 Pa. 656, 544 A.2d 1342 (1988). An appellate court may consider only facts which have been duly certified in the record on appeal. *Button v. Button*, 378 Pa.Super. 142, 145, 548 A.2d 316, 318 (1988), *citing Commonwealth v. Young*, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974); *Barner v. Barner*, 364 Pa.Super. 1, 9, 527 A.2d 122, 126 (1987). *See* Pa.R.A.P., Rule 1921, 42 Pa.C.S.A. (Composition of record on appeal). In the instant case, counsel for both parties elicited extensive testimony from various witnesses pertaining to the amounts in question. Therefore, we have been able to properly review the issue presented even without the benefit of the exhibits.