## Morrison v. Correctional Physician Services Inc.

C.P. of Philadelphia County, October Term 2000, nos. 3040, 3041, 3042.

*William Mathews* and *Richard M. Jordan,* for plaintiff.

*Derrick Howard,* for defendant.

SHEPPARD JR., *J.,* March 8, 2001—This opinion is submitted relative to the appeals in three cases of this court's order of December 20, 2000 which denied defendant's three petitions to strike off and/or open confessed judgment.[1]

For purposes of this appeal this court respectfully resubmits and relies upon the opinion filed in support of that December 20, 2000 order. (That opinion is attached as exhibit "A".)

It is respectfully submitted that based on that opinion, this court's order should be affirmed.

---

1. The three cases were heard as one matter. Each involved a confessed judgment on a different note, but involved the same parties.

---

EXHIBIT "A"

SHEPPARD JR., *J.,* December 20, 2000—Presently before this court are three petitions to strike off and/or open the judgments by confession of defendant, Correctional Physician Services Inc., and the consolidated answer of plaintiff, Maria Morrison on behalf of her

minor son, Joseph Morrison. For purposes of economy, this court will consider the three petitions as one, since they are identical, except for the respective amounts of the judgments.

For the reasons stated, this court *denies* the petitions to strike off and/or open the judgments by confession.

## BACKGROUND[1]

In 1989, Dr. Kenan Umar, as president and founder of CPS, organized the company as a health care provider to service individuals incarcerated in state prisons. Petition at ¶1. At some point, Dr. Umar employed his son, Emre Umar, to assist him with CPS's operations. *Id.* at ¶2. At some later date, Emre became a vice president of CPS. See 12/4/00 N.T. at 12:13. On August 28, 1991, Dr. Umar executed a document entitled "Limited power of attorney" in favor of Emre. Answer, exhibit A. Pursuant to the power of attorney, Emre was granted the power "to transact business, make, execute and acknowledge all agreements, contracts, orders, deeds, writings, assurances and instruments for any matter, with the same powers and for all purposes with the same validity as [Dr. Umar] could, if personally present,

---

1. This background is presented to give factual context to these petitions. These facts were gleaned from the petitions, the consolidated answer, the complaints and the hearing held on December 4, 2000. Though the court cannot go outside the record to dispose of the petitions to strike and is limited to the complaints and documents filed to confess judgment, the factual context is necessary to rule on the petitions to open in order to determine if defendant has a meritorious defense to the confessed judgments. See *Resolution Trust Corp. v. Copley Qu-Wayne Associates,* 546 Pa. 98, 106, 683 A.2d 269, 273 (1996) (comparing the different parameters for reviewing a petition to strike versus a petition to open).

with regard to CPS Inc." *Id.* at 1. Specifically, Emre was granted the power "[t]o endorse notes, checks and other instruments which may require [Dr. Umar's] endorsement," as well as the power to pay debts, borrow money and mortgage real or personal property. *Id.* at section 1(c), (d) and (e). The power of attorney was not terminated or canceled until July 10, 2000, when Dr. Umar wrote a certified letter to Emre to that effect. Answer, exhibit B.

In September of 1999, Emre had allegedly removed all of the funds from CPS's bank account, in excess of $1,000,000, without authorization. Petition at ¶3. When questioned by Dr. Umar, Emre allegedly insisted that he was entitled to the money, but he offered to return it in exchange for an interest in CPS. *Id.* at ¶4. Accordingly, on September 17, 1999, father and son arranged a settlement agreement in principle providing, inter alia, that Emre would receive 50 percent of the stock of CPS and that he would return any funds taken from CPS; and setting forth other limitations on the spending of funds, responsibilities for the corporate debt, and requiring approval from the board of directors for payments made other than Dr. Umar's salary. Petition, exhibit A. The settlement agreement also contemplated the negotiations for the sale of the company. *Id.* at ¶4. On September 23, 1999, Dr. Umar executed a letter acknowledging receipt of a cash payment from Emre in the amount of $53,000 which constituted payment in full of the sum of $701,000 borrowed from CPS on September 11, 1999.[2] N.T., exhibit P-1. See also, N.T. at 41:18-44:7.

---

2. At least $658,000 of the $701,000 was used by Emre to pay his and his estranged wife, Maria Morrison's mortgage company, as well as their personal taxes. N.T. 14:21-16:19; 74:21-18. Both Emre and Maria

During this same time period, Emre had executed three promissory notes, in his capacity as vice president and on behalf of CPS, in which CPS promised to pay the respective amounts to the order of Joseph Morrison, in care of his parent and guardian, Maria Morrison. Petition, exhibits B and C.[3] See also, N.T. 12:13; 19:16; 79:23-25 (referring to testimony that Emre was a vice president when he signed the notes). Specifically, on August 13, 1999, Emre executed a note for $140,000;[4] on September 17, 1999, Emre executed a note for $100,000;[5] and on September 23, 1999, Emre executed a note for $8,000.[6] Each note had a zero percent interest rate and each had an identical confession of judgment clause and "disclosure for confession of judgment." The confession of judgment clause stated as follows:

"Protest waived. On nonpayment of any installment when due, all remaining installments shall, at the option of the holder, become immediately due and payable. I agree to pay if this note is placed in the hands of an attorney for collection, a reasonable *attorney's fee of 25 percent of the amount due and owing on the defaulted note.* And to secure the payment of said amount,

---

testified that Maria had loaned Emre a substantial amount of money to pay back these borrowed funds from her own real estate transactions, but that the $658,000 had nothing to do with the $248,000 that was loaned by the Joseph Morrison Trust Fund. In addition, they both testified that the $248,000 was borrowed prior to Emre's taking funds from CPS for their personal needs. N.T. 75:25-76:22; 91:21-98:12.

3. Answer, exhibits C, D and E are copies of all three notes. Petitioner/defendant did not attach a copy of the August 13, 1999 note, which is represented by answer, exhibit C.

4. Answer, exhibit C.

5. Petition, exhibit B; or answer, exhibit D.

6. Petition, exhibit C; or answer, exhibit E.

I hereby authorize, irrevocably, the prothonotary, clerk of court, or any attorney of any court of record to appear for me in such court, in term time, or vacation, *at any time before or after maturity and confess judgment* without process in favor of any holder of this note, with or without the filing of an averment or declaration of default, for such amount as may appear to be unpaid thereon, *together with charges, costs and attorney's fee,* as above provided, and waive and release all errors which may intervene in any such proceedings and waive all right to appeal and consent to immediate execution upon such judgment nor shall any bill in equity be filed to interfere in any manner with the operation of such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof, and waiving and releasing benefit of all appraisement, inquisition of real estate, hereby voluntarily condemning said real estate and authorizing the entry of such condemnation upon any writ issued, stay of execution and all rights under the exemption laws of any state, now in force, or hereafter to be passed." Answer, exhibits C, D and E. (emphasis added)

These notes did not set forth the circumstances for the respective loans, nor did they define what constituted a default nor what date the loan had to be repaid or to whom. *Id.* See petition at ¶10. These notes were purportedly executed in exchange for loans made to CPS from the Joseph Morrison Trust Fund, in order for CPS to meet its payroll and operating expenses. N.T. 7:8-15; 19:14-21; 63:16-23. See answer, exhibit F.[7]

7. Ironically, the check made out on August 13, 1999, is in the amount of $100,000. Answer, exhibit F. However, the note, executed on this same date, is in the amount of $140,000. Answer, exhibit C. In its peti-

In March 2000, Dr. Umar and Emre finalized an agreement to sell two contracts of CPS to Prison Health Services Inc. for $14,000,000. As testified by Manrico A. Troncelliti, counsel for CPS, some of the proceeds were used to pay off corporate debts and major creditors. N.T. at 45:17-47:14. See also, N.T. 22:11-28:22 (Dr. Umar's testimony which describes the disbursement of the $14 million and reveals that he and Emre had each received $500,000 from these proceeds). To complete this transaction, CPS, Dr. Umar and Emre were advised by the CPS oversight committee of the need to set forth

---

tions, defendant did not raise, as a defense, any discrepancy between the check and the note. However, defendant, does raise this inconsistency in its supplemental brief. See supplemental brief at 2 n.1.

Normally, failure to raise this issue in its petitions constitutes waiver of this defense under Rule 2959(c) of the Pennsylvania Rules of Civil Procedure. See *Estate of Silvestri v. Kinest,* 318 Pa. Super. 14, 18-19, 464 A.2d 494, 496 (1983) (holding that debtor waived his defenses which were asserted generally in his petition and then specifically in a subsequent memorandum of law because he had failed to give proper and timely notice to opposing counsel).

Even assuming arguendo that defendant did not waive the inconsistency defense, Emre testified that a total of $248,000 was loaned from the Joseph Morrison Trust Fund, which would account for the $40,000 discrepancy. N.T. at 77:19-80:23. The court finds his testimony on this point to be credible. Moreover, Dr. Umar only admitted that CPS received $100,000, which he maintains that Emre obtained, but he denies having any knowledge that the monies came from Maria or Joseph Morrison. Further, he does not admit that CPS received any money other than the $100,000. N.T. 7:1-9:21; 18:18-22:4. Dr. Umar's testimony, on this point, seems dubious in light of the fact that the court has photocopies of the three checks made payable to CPS, along with the notes. Answer, exhibits C-F.

For this reason, the court finds that the inconsistency between the check and the note of August 13, 1999, does not constitute a meritorious defense which would warrant opening the judgment.

all major outstanding debts of CPS, but the alleged debt owed to the Morrison Trust Fund was not mentioned. Petition, at ¶¶15-16. See also, petition, exhibit D.

On May 17, 2000, Maria Morrison Umar filed for divorce from Emre Umar. Answer, exhibit G. Pursuant to the divorce complaint, she requested equitable distribution pursuant to section 3502 of the Divorce Code. *Id.* at Count II.

On October 20, 2000, Ms. Morrison, on behalf of her minor son, filed three complaints in confession of judgment against CPS, as defendant, as well as PNC Bank, Manrico Troncelliti, Stewart Greenleaf, Robert Boland, oversight committee, Dr. Kenan Umar, and First Union National Bank, as garnishees. In her complaints, Ms. Morrison asserts, essentially, that her son's trust fund loaned money to defendant on three separate occasions and executed three separate promissory notes in connection with, and as security for, these loans. Complaints at ¶¶4 and 5.[8] The respective complaints basically contained all the necessary averments, as required by Pa.R.C.P. 2952(a). With respect to the default, plaintiff alleged the following:

"(6) Defendant breached and/or defaulted under the note by failing to pay the principal amount of the note upon demand by plaintiff.

"(7) Defendant has made no payment on account of the amount owed under the note." *Id.* at ¶¶6-7.

Moreover, plaintiff included the following necessary documents with her complaints: (1) an entry of appear-

---

8. The complaints are identical with respect to the allegations, except for the dates and amounts of the respective loans and promissory notes. Each complaint demanded the amount of the respective note and 25 percent attorney fees and costs.

ance; (2) a praecipe for writ of execution pursuant to Pa.R.C.P. 2958.3;[9] (3) notice under Rule 236; (4) entry of appearance, confession of judgment and praecipe for assessment of damages (including a breakdown of the principal, authorized attorney's fees and costs for each respective note); (5) an affidavit of addresses, income, commercial transaction, nonmilitary service, non-retail installment sales transaction, and to complaint in confession of judgment for money damages and waiver of rights;[10] and (6) an affidavit of default.

On November 14, 2000, defendant filed its petitions to open/strike the confessed judgments. On November 21, 2000, plaintiff filed her consolidated answer. This court conducted a hearing on December 4, 2000. Following this hearing, the parties filed supplemental briefs in support of their respective positions.

## DISCUSSION

### I. *Legal Standards*

Rule 2959 of the Pennsylvania Rules of Civil Procedure provides that all grounds for relief whether to strike

9. The only action which included the wording of Rule 2958.3 was no. 3042.

10. The state and/or local rules to confess judgment, Pa.R.C.P. 2950 et seq., typically require separate affidavits, but defendant did not assert this technical defect in its petition which constitutes a waiver of that defense. Pa.R.C.P. 2959(c). In addition, this defect is of the sort which could be overlooked or amended nunc pro tunc. *West Penn Sand & Gravel Co. v. Shippingport Sand Co.,* 367 Pa. 218, 221, 80 A.2d 84, 85 (1951) (permitting amendment to affidavit of default); *Tabas v. Robert Development Co.,* 223 Pa. Super. 290, 294, 297 A.2d 481, 484 (1972) (holding that allowance of affidavit of nonmilitary service to be entered nunc pro tunc was not abuse of discretion where defendants were not actually in the military service).

or open the judgment must be stated in a single petition. The Pennsylvania Supreme Court has stated that "a petition to strike and a petition to open are two distinct forms of relief, each with separate remedies." *Resolution Trust Corp. v. Copley Qu-Wayne Assocs.,* 546 Pa. 98, 105, 683 A.2d 269, 273 (1996). Accordingly, there are two different standards to discuss.

A petition to strike a judgment operates as a demurrer to the record and "may be granted only for a fatal defect or irregularity appearing on the face of the record." *Resolution Trust Corp.* at 106, 683 A.2d at 273. In deciding the merits of a petition to strike, the court is limited to review only "the record *as filed by the party in whose favor the warrant is given, i.e.,* the complaint and the documents which contain confession of judgment clauses." *Id.* (emphasis in original) "Matters dehors the record filed by the party in whose favor the warrant is given will not be considered. If the record is self-sustaining, the judgment will not be stricken." *Id.* See also, *Dollar Bank v. Northwood Cheese Co. Inc.,* 431 Pa. Super. 541, 547, 637 A.2d 309, 311-12 (1994) (stating that "[a] warrant to confess judgment must be explicit and will be strictly construed, with any ambiguities resolved against the party in whose favor the warrant is given"). Moreover, "if the truth of the factual averments contained in such record are disputed, then the remedy is by a proceeding to open the judgment and not to strike." *Resolution Trust Corp.,* 546 Pa. at 106, 683 A.2d at 273.

In contrast, a petition to open a judgment is governed by the standard listed in Pa.R.C.P. 2959. Subsection (e) of Rule 2959 states, in pertinent part, that:

"The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment

pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment."

Traditionally, the court must open a judgment taken by confession where the petitioner acts promptly, alleges a meritorious defense and presents sufficient evidence of that defense to raise a jury question. See *Germantown Savings Bank v. Talacki,* 441 Pa. Super. 513, 520, 657 A.2d 1285, 1288-89 (1995). "In making such a determination, the court employs the same standard as that of the directed verdict—'viewing all the evidence in the light most favorable to the petitioner and accepting as true all evidence and proper inferences therefrom supporting the defense while rejecting adverse allegations of the party obtaining the judgment.' " *Iron Worker's Savings and Loan Association v. IWS Inc.,* 424 Pa. Super. 255, 261, 622 A.2d 367, 370 (1993). (citations omitted) Moreover, opening a judgment pursuant to Rule 2959(e) requires "the judgment debtor to offer clear, direct, precise and 'believable' evidence of its meritorious defense." *Id.* at 262, 622 A.2d at 370. See also, *Manor Building Corp. v. Manor Complex Associates Ltd.,* 435 Pa. Super. 246, 251 n.2, 645 A.2d 843, 845 n.2 (stating that "[p]roceedings to open a judgment involve equitable principles and only those judgments which warrant equitable interference will be opened").

Here, CPS has properly asserted its request to strike off and/or open the confessed judgments in the same respective petitions pursuant to subsection (a) of Rule 2959, Pa.R.C.P. Their arguments will each be addressed

under the different standards for relief as mandated by our Supreme Court.

## II. *Emre's Authority to Sign Notes With Confession of Judgment Clauses*

As grounds for striking the judgments, CPS first asserts that it did not waive its rights knowingly, voluntarily and intelligently where Emre had conducted a fraud upon CPS, had breached his fiduciary duties, and had taken funds that are not rightfully his. Petition at ¶¶19-21. While this assertion attempts to make a constitutional claim, CPS's argument is primarily based on Emre's alleged lack of authority to bind CPS to a confession of judgment clause where he purportedly committed a fraud on the corporation in stealing funds and in executing the notes without authorization. See pet'r. mem. of law, at 3-5. In analyzing this issue, this court recalls certain principles.

First, it has been stated that "Pennsylvania's practice in allowing the entry of judgments by confession is not unconstitutional." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1270 (3d Cir. 1994). All that is required is that there be "a voluntary, knowing and intelligent waiver of the party's due process rights." *Federman v. Pozsonyi,* 365 Pa. Super. 324, 329, 529 A.2d 530, 533 (1987). In addition, because of the severity of the consequences attached to a warrant of attorney to confess judgment, the courts have required that as a matter of public policy the consent of the party authorizing confession be clearly given." *Egyptian Sands Real Estate Inc. v. Polony,* 222 Pa. Super. 315, 319-20, 294 A.2d 799, 803 (1972).

Emre's signature on all three promissory notes, containing confession of judgment clauses, includes the notation that he executed them as a vice president of CPS. See petition, exhibits B and C. He also signed a "Disclosure for confession of judgment," on CPS's behalf, which included the following statement: "I am knowingly, intelligently, and voluntarily waiving [rights to advance notice and a hearing after judgment is entered]." *Id.*

As a vice president of CPS, it appears that Emre had either express, implied or apparent authority to execute the notes. It is a matter of hornbook law "that a corporation is a legal fiction which can act only through its officers, directors and other agents." *Biller v. Ziegler,* 406 Pa. Super. 1, 6-7, 593 A.2d 436, 439 (1991). (citations omitted) A corporation is bound by its agents' acts where those acts are performed by any express grant of power, as well as those acts which are performed within the agent's implied or apparent authority, unless the agent acted for his own benefit without the corporation's ratification of his action. *Lokay v. Lehigh Valley Cooperative Farmers Inc.,* 342 Pa. Super. 89, 97, 492 A.2d 405, 409 (1985). " 'Apparent authority' arises when a corporation permits its agent to assume a certain power or authority, or represents him as having it." *Id.* at 98, 492 A.2d at 409. In addition, a corporation is estopped from raising the defense that an officer acted outside the scope of his authority where the corporation received and enjoyed the benefits of the act or contract. *Id.*

On the face of the record presented to confess judgment, this court cannot conclude that Emre's signature as a vice president of CPS did not effectively constitute a waiver of CPS's constitutional rights. Therefore, the court cannot strike the judgments on this ground.

Moreover, the issue of whether Emre had authority to execute the notes containing confession of judgment clauses, or whether he exceeded his corporate authority, cannot be decided by a petition to strike but must be resolved by a petition to open since the issue raises potential disputes of fact. See *Resolution Trust Corp.*, 546 Pa. at 113-14, 683 A.2d at 277 (concluding that the issue of express authority of a managing partner to bind the general partner and the partnership to a confession of judgment clause is properly addressed by a petition to open and not a petition to strike).

Under the standard for determining whether to open the judgment, the court finds that CPS failed to present sufficient credible evidence that Emre was without authority to sign the notes with confession of judgment clauses. Alternatively, CPS should be estopped from asserting such a defense since the evidence clearly showed that it received and used the monies from the Morrison Trust Fund to meet payroll expenses. Answer, exhibit F (photocopies of three checks made payable to CPS on the same respective dates as the notes).

First, the notes were executed when Emre had Dr. Umar's power of attorney, which enabled him to "endorse notes, checks and other instruments which may require [Dr. Umar's] endorsement." Answer, exhibit A. While the power of attorney did not expressly state that Emre may execute instruments containing confession of judgment clauses, this omission should not negate his authority. Dr. Umar, himself, testified that he had asked Emre to borrow money since the banks were not extending any more money because CPS had filled up its line of credit. N.T. 7:8-15. Dr. Umar had been the 100 percent shareholder at the time the loans were made and the notes were executed. N.T. 11:23-12:5. Dr. Umar

had actually deposited the $100,000 check made out on August 13, 1999. N.T. 7:17-18. He also admitted that Emre as vice president, was authorized to borrow the money to meet CPS's payroll expenses. N.T. 19:13-20:2. Moreover, others testified that the money loaned from the Morrison Trust Fund was supposed to pay CPS's payroll and/or operating expenses. N.T. 63:13-64:3; 78:7; 93:10-13.

In light of both the documentary evidence, that is, the notes, the photocopies of the checks, the power of attorney, along with the testimonial evidence, this court finds that it cannot open the judgments on the ground that Emre did not have authority to execute these notes.

### III. *Whether the Notes Are Ambiguous*

CPS also contends that the confession of judgment clauses in the notes are unenforceable since the notes are ambiguous and fail to set forth when payments were due, whether payments could be made in installments, and to whom payments should be directed. Petition at ¶¶23-25. In response to this assertion, plaintiff maintains that these notes are "payable on demand" and need not state when installments should be made. Answer at ¶10. Though CPS's argument attempts to raise factual issues,[11] the court may determine the nature of the notes as a matter of law.[12]

---

11. It is unclear whether CPS is raising the ambiguity issue as grounds for striking or opening the judgment, However, this court need only address it in determining whether to strike the judgment since it does not require this court to consider matters outside of the record filed to confess judgment.

12. The interpretation and construction of a contract is a matter of law to be decided by the court. *Roman Mosaic & Tile Co. v. Thomas P. Carney Inc.,* 729 A.2d 73, 77 (Pa. Super. 1999).

It is true that an ambiguity in the terms of a note and/or the confession of judgment clause can affect the validity of a confessed judgment and must be construed against the holder of the note. See *Willits v. Fryer,* 734 A.2d 425, 428-29 (Pa. Super. 1999); *Dollar Bank,* 431 Pa. Super. at 547, 637 A.2d at 311-12; *Manor Building, Corp. v. Manor Complex Associates Ltd.,* 435 Pa. Super. 246, 252, 645 A.2d 843, 846 (1994). In *Willits,* our Superior Court addressed a consumer credit transaction where the debt was incurred by a natural person. 734 A.2d at 428. The court held that Rule 2950, combined with Rules 2951 and 2952, prohibited judgment by confession in such instance. *Id.* In dicta, however, the court addressed the ambiguity issue and found that the payment terms of the promissory note in that case were not clear on their face. *Id.* The promissory notes in *Willits* included payment terms which provided the following:

"Two years after date we promise to pay to the order of George D. Willits $2,900 at his residence in monthly payments of $38.13 per month, including principal and interest with interest 8 1/4 percent and without defalcation, value received [ ] (9 yr. amortization with two yr. balloon)[.]" *Id.*

The court concluded that "[u]nder the express language of the promissory note, it is unclear whether appellants were obligated to begin payments to appellees as of August 1996 or as of July 1998." *Id.* Based on these ambiguities, the court found that the appellants had alleged a meritorious defense and provided sufficient evidence of that defense to create a jury issue. *Id.* at 428-29.

*Willits* is distinguishable from the present case. Here, the promissory notes are payable "to the order of Joseph Morrison, in care of his parent and guardian, Maria Morrison." Petition, exhibits B and C. However, the notes contained no date for payment to be made. As plaintiff correctly points out, "[a] promise or order is 'payable on demand' if it: . . . does not state any time of payment" under 13 Pa.C.S. §3108. Therefore, these notes can logically be construed as demand notes, meaning that the promisor (CPS) must pay these notes on demand by the promisee (Joseph Morrison).

Moreover, the reference to installments in the confession of judgment clauses of these notes does not change their nature, nor render them defective or ambiguous. In *Master Homecraft Co. v. Zimmerman,* 208 Pa. Super. 401, 403-404, 222 A.2d 440, 441-42 (1966), the court addressed a note containing a confession of judgment clause which left blank when installments were to be made.[13] The appellate court held that this omission did not render the note defective and did not change the presumption that the note was payable on demand. *Id.* at 404-405, 222 A.2d at 441. It reversed the trial court's order striking the confessed judgment but did not preclude the debtor from bringing a petition to open to determine the intent of the parties in not filling in the blanks. *Id.* at 405, 222 A.2d at 442-43.

---

13. Specifically, the note in *Zimmerman* provided, in pertinent part, as follows:

"For value received, I/we or either of us promise to pay to the order of Master Homecraft Company, the sum of $9,747 in ___ monthly installments of $___ each, beginning on the ___ day of _____, 19___ and continuing on the same day of each and every month thereafter until the full amount thereof is paid." *Id.* at 403, 222 A.2d at 441-42.

Here the notes do not contain any such blanks, nor do they imply any date to make payment. The warrant of attorney allows for confession of judgment upon "non-payment of any installment when due . . . at any time before or after maturity . . . with or without the filing of an averment or declaration of default." Petition, exhibits B and C. The court finds that the warrant of attorney is explicit and unambiguous, containing no condition or limitation upon the entry of judgment by confession. See *Dollar Bank*, 431 Pa. Super. at 548-49, 637 A.2d at 312 ("Unquestionably, if a warrant of attorney clause authorizes entry of judgment by confession only after default, a judgment entered prior to default or lacking an averment of default is invalid.") ("Where the warrant of attorney contains no condition, limitation, or restriction of any kind as to when judgment may be entered, the authority to issue judgment for the full amount of the loan is immediate."). (citations omitted)

Therefore, the court finds that the judgments have not been undermined by the unambiguous language in the notes and their confession of judgment clauses. Similarly, this court cannot conclude that CPS has asserted a meritorious defense or presented sufficient evidence to raise a jury question regarding the alleged ambiguity in the notes. The remaining defenses asserted in the petitions are merely legal conclusions which have not been supported by argument, and this court need not consider them at this time.[14] *Estate of Silvestri v. Kinest,*

---

14. Thus, defendant contends that "the minor Morrison's claims are barred by the doctrine of estoppel . . . the lack and/or failure of consideration . . . by the doctrine of laches . . . by the doctrine of release . . . due to fraud . . . due to the doctrine of impossibility of performance . . .

318 Pa. Super. 14, 18-19, 464 A.2d 494, 496 (1983) (holding that judgment debtor failed to preserve his defense by first raising it generally in his petition and then specifically in his subsequent memorandum of law).

## CONCLUSION

For these reasons, this court *denies* defendant, CPS's petitions to strike and its petitions to open the confessed judgments issued in favor of plaintiff Maria Morrison, on behalf of her minor son, Joseph Morrison.

## ORDER

And now, December 20, 2000, upon consideration of defendant's petitions to strike off and/or open confessed judgments,[1] the plaintiff's consolidated answer, all other matters of record, and after a hearing on December 4, 2000, and in accordance with the opinion being filed contemporaneously with this order, it is hereby ordered that defendant's petitions to strike off and/or open the confessed judgments are denied.

---

due to the doctrine of mistake . . . due to his failure to state a claim upon which relief may be granted . . . by the doctrine of waiver . . . by the statute of frauds . . . by the doctrine of setoff . . . because of illegality . . . [and] by the doctrine of duress." Petition at ¶¶ 24-39.

---

1. There are three separate actions on three notes which are identical except for the note and judgment amounts.