TRUMBULL CORPORATION, a
Pennsylvania corporation

v.

BOSS CONSTRUCTION, INC., a Penn-
sylvania corporation, A & L, Inc., a
Pennsylvania corporation, and Safeco
Insurance Company of America.

Appeal of A & L, Inc.

Trumbull Corporation, Appellant,

v.

Boss Construction, Inc., a Pennsylvania
corporation, A & L, Inc., a Pennsylva-
nia corporation, and Safeco Insurance
Company of America.

Commonwealth Court of Pennsylvania.

Argued May 8, 2002.

Decided July 2, 2002.

James P. Thomas, Pittsburgh, for appellant.

Amy E. Bentz, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Trumbull Corporation (Trumbull) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which failed to award it penalty interest and attorney's fees after entering judgment in favor of Trumbull determining that an oral contract existed between Trumbull and A & L Inc. (A & L). A & L also appeals arguing that the trial court erred in determining that an oral contract existed.

The history of this case is as follows. In 1996, the Commonwealth of Pennsylvania, Department of Transportation (Department) entered into a contract with A & L for a road resurfacing project. In conjunction therewith, A & L obtained a labor and material bond from Safeco Insurance Company of America (Safeco). A & L acted as the general contractor and retained Boss Construction, Inc. (Boss) as one of its subcontractors. Boss purchased road material for the project from Trumbull. Although A & L paid Boss as A & L received payments from Department, Boss failed to pay Trumbull for materials in the amount of $19,156.35. Trumbull sought recovery under the bond and sent notice to A & L and Safeco on June 18, 1997.

Thereafter in January 1998, Trumbull filed a civil complaint in the trial court seeking recovery against Boss for breach of contract, recovery against A & L for its oral promise to pay Boss' debt and recovery under the bond from A & L and Safeco. The trial court, however, precluded Trumbull from presenting evidence concerning the alleged oral promise made by A & L to pay Boss' debt. The trial court concluded that Trumbull's claim was barred as a matter of law by the Prompt Pay Act (Act) and entered a verdict in favor of A & L and Safeco.[1]

---

1. Act of November 26, 1978, P.L. 1309, *as amended* by Act of December 12, 1994, P.L. 1042, formerly at 73 P.S. § 1626.9. The legislation was subsequently repealed and recodified as Section 3939(b) of the Commonwealth Procurement Code, 62 Pa.C.S. § 3939(b).

Trumbull appealed to this court which agreed that pursuant to the Prompt Pay Act because A & L made payments to Boss, Trumbull's claim was barred. *Trumbull Corporation v. Boss Construction, Inc., (Trumbull I)*, 768 A.2d 368 (Pa.Cmwlth.2001). However, this court determined that the trial court erred in not permitting Trumbull to present evidence relating to oral promises made by A & L to pay Boss' debt in full. We determined that such an oral contract could exist outside the Statute of Frauds requirement that a promise to pay the debt of another be in writing, if Trumbull could prove that the main purpose or leading object of A & L was to serve its own business or pecuniary interest. *Id.* at 371. As such, this court remanded the matter for a new trial to determine whether A & L made an oral promise for the main purpose of serving its own business or pecuniary interest.

On remand, the trial court conducted a full evidentiary hearing and entered a verdict in favor of Trumbull for $19,156.35. The trial court concluded that A & L and Trumbull reached an oral agreement on June 19, 1997, that there was consideration for the agreement and that A & L had a business purpose for guaranteeing Boss' payment sufficient to satisfy the leading object exception to the Statute of Frauds. Both parties filed post trial motions, which the court denied in an order dated July 5, 2001. This appeal followed.

■ When reviewing a trial court's order denying a motion for post-trial relief, our review is limited to determining whether the trial court committed an error of law or abused it discretion. *Ellis v. City of Pittsburgh*, 703 A.2d 593 (Pa. Cmwlth.1997), *petition for allowance of appeal denied*, 555 Pa. 734, 725 A.2d 184 (1998).

■ We initially address those issues raised by A & L, the first of which is whether there was clear and precise evidence of an oral agreement. A & L states that under Pennsylvania law, the existence and terms of an oral contract must be proved by clear and precise evidence. *Redick v. Kraft, Inc.*, 745 F.Supp. 296, 300 (E.D.Pa.1990). In this case the trial court determined that an oral agreement was reached between the parties at a meeting on June 19, 1997. The meeting was attended by Dominic Coccagna, Controller for Trumbull, Michael Rago, the then President of Trumbull, Louis Ruscitto, CEO of A & L and Michelle Herron, CFO of A & L. Coccagna and Rago testified that A & L promised to take care of Boss' obligation after the end of A & L's fiscal year on September 30th. Ruscitto denied that such a promise was made. The trial court, however, credited the testimony of Coccagna and Rago that an oral promise was made and also observed that the testimony of Herron corroborated the testimony of Trumbull's witnesses.

As to the specific testimony, Coccagna testified that concerning the Boss invoice, Ruscitto stated "We're going to pay the bill." (R.R. at 42a.) Rago similarly testified that he told Ruscitto that he was dissatisfied with the fact that payment had not yet been made and Ruscitto "indicated that he would take care of this bill, he would pay it." (R.R. at 70a.) Additionally, as to when payment of the bill would occur, both Coccagna and Rago stated that Ruscitto said that A & L would pay the bill at the end of its fiscal year, which was September 30, 1997. (R.R. at 42a, 71a.) Herron testified that to her recollection, Ruscitto did not testify that A & L would pay the invoice but acknowledged that he may have said that A & L would take care of the invoice. (R.R. 100a.) The trial court determined that based on the testimony of Trumbull's witnesses, whose testi-

mony he credited, A & L agreed to pay the Boss invoice after the end of its fiscal year.

■ Although A & L points to language of its witnesses wherein they stated that A & L never agreed to pay the bill, the trial court determines the credibility of all witnesses and weighs the evidence before it. *Thomas A. Armbruster Inc. v. Barron,* 341 Pa.Super. 409, 491 A.2d 882 (1985). Additionally, despite A & L's contention that there is not clear and convincing evidence that an oral contract was made, the testimony of Trumbull's witnesses, credited by the trial court, that A & L stated that it would pay the bill after the end of its fiscal year, establishes that an oral contract was made.

■ The next issue addressed is whether Trumbull failed to comply with the terms of the oral agreement.[2] A & L argues that even if there was an oral agreement whereby A & L agreed to pay Boss' debt, the agreement was breached by Trumbull because contrary to the agreement, Trumbull pursued a claim on the bond prior to the end of A & L's fiscal year of September 30, 1997. Specifically, the testimony of Trumbull's witnesses was that A & L agreed to pay Boss' debt after September 30, 1997, the end of A & L's fiscal year and in exchange, Trumbull agreed not to pursue a claim on the Safeco bond.

■ "[W]hen a party to a contract seeks to enforce the agreement or to recover damages for breach of the agreement, that party must prove that he has performed all of his own obligations under the contract." *Nikole, Inc. v. Klinger,* 412 Pa.Super. 289, 603 A.2d 587, 593 (1992), *petition*

*for allowance of appeal denied,* 535 Pa. 660, 634 A.2d 223 (1993) (citation omitted). In this case, A & L maintains that Trumbull breached its obligation on June 18, 1997 and July 17, 1997. Specifically, Coccagna sent a letter to Safeco on June 18, 1997 giving notice of its "claim against A & L Construction bond number 5682202, in the amount of $19,156.35 ...." (R.R. at 116a.) Additionally, on July 17, 1997, Coccagna sent a follow up letter to Safeco stating that Trumbull had not received "satisfactory correspondence informing us when payment will be made." The letter additionally stated "[i]f we are not provided with an acceptable definite payment date within 15 days of the date of this letter, we will proceed with legal action against the bond." (R.R. at 118a.)

A & L states that assuming arguendo that A & L agreed to pay Boss' debt, the one condition attached to such a promise was Trumbull's agreement not to pursue a bond claim. By sending letters to Safeco pursuing the bond and threatening legal action, Trumbull breached its obligation and its common law cause of action against A & L must fail.

We observe, however, that the initial letter to Safeco was sent on June 18, 1997, one day prior to the oral contract with A & L. In fact at the June 19, 1997 meeting, the June 18 Safeco letter was discussed. Specifically, Ruscitto requested that Trumbull hold off on filing the bond claim letter. (R.R. at 42a.) However, Coccagna told him that the letter had already been sent. Ruscitto responded that he wished Trumbull hadn't done that. (R.R. at 42a.) Because the letter was sent prior to the

---

**2.** The trial court determined that the issue of whether A & L breached the parties oral agreement was outside the limited scope of this court's remand order in *Trumbull I.* We disagree. In *Trumbull I,* this court determined that the trial court erred in not permitting A & L to present any evidence as to the oral contract. Thus, the remand order envisioned that evidence would be produced with respect to all requirements of the oral contract.

agreement reached between A & L and Trumbull and A & L knew about the letter to Safeco, the letter to Safeco could not be a breach of an agreement not yet made.

Moreover, because A & L was aware of the fact that Trumbull had already contacted Safeco concerning the bond, we agree that the July 17 letter did not constitute a new claim on the bond as that had already been done by the June 18 letter. The July 17 letter was merely a follow up to the original letter of June 18 and did not constitute a new pursuit. Here, Trumbull did not pursue a claim on the Safeco bond until January, 1998, more than 3 months following the end of A & L's fiscal year, when it filed suit against Safeco.

The last issue raised by A & L is whether the primary purpose of A & L's promise to pay Boss' debt was to advance A & L's business or pecuniary interest.[3]

The "leading object" or "main purpose" exception to the Statute of Frauds is only applicable if the trier of fact determines that an oral promise to pay the debt of another was made to advance some pecuniary or business purpose of the promisor. *Biller v. Ziegler*, 406 Pa.Super. 1, 593 A.2d 436 (1991). Here, A & L argues that the trial court did not find that A & L made the promise to advance its own pecuniary interests; rather, the trial court determined that A & L "could have" or "may have" made a promise for its pecuniary interest.[4] As such because A &

L did not in fact make the promise for its own pecuniary interest, it is erroneous to apply the leading object exception to the Statute of Frauds.

We initially observe that in *Biller* the Superior Court stated that in regard to the principal object or pecuniary interest exception to the Statute of Frauds:

> there is less need for cautionary or evidentiary formality in the commercial context ... The determination as to whether a promisor's main purpose for making a guaranty was to secure his own pecuniary or business ends is for the trier of fact, and will not be reversed absent abuse of discretion.

*Id.* 593 A.2d at 440 (citation omitted). Here, the trial court determined that Ruscitto's main purpose in guaranteeing Boss' debt was to protect his business interests. The trial court merely noted that the business interests were numerable, including the fact that his wife was co-owner of Boss, he and his wife were personal guarantors on the Safeco bond and that Ruscitto wanted to protect the reputation of A & L. Thus, based on all the factors involved, it was reasonable for the trial court to conclude that Ruscitto had a business purpose for making the oral promise.

Finally, we address Trumbull's issue as to whether the trial court erred in failing to award penalty interest and attorney's fees as provided by the Prompt Pay

---

3. Ruscitto and his wife were personal guarantors on the Safeco policy. Additionally, Ruscitto's wife was co-owner of Boss construction.

4. A & L cites the following from the trial court opinion:

> Ruscitto, in fact, had ample motivation for guaranteeing Boss' outstanding obligation. He *may* not have wanted to place A & L in the position of using subcontractors (Boss) who defaulted on payment to their suppliers. He *may* have wished to suppress the information that his wife's company (Boss) had defaulted on payment to one of its suppliers. He *may* have preferred to limit the number of claims filed on the bond policy. All of these factors *could have* reflected negatively on A & L's business reputation. It *could have* affected PennDOT's future unwillingness to award contracts to A & L.

(R.R. at 163a.)(Emphasis added.)

Act.[5] Section 6.5(a) of the Prompt Pay Act provides:

> If ... a claim with ... a court of competent jurisdiction is commenced to recover payment due under this act [Prompt Pay Act] and it is determined that the ... contractor or subcontractor has failed to comply with the payment terms of this act ... the court may award ... a penalty equal to 1% per month of the amount that was withheld in bad faith.

Trumbull argues that A & L acted in bad faith when it refused to honor the oral agreement to pay Boss' debt and that such action was arbitrary, vexatious and in bad faith thus entitling Trumbull to penalties and attorney fees under the Prompt Pay Act.

A & L responds and we agree that Trumbull is not entitled to penalties under the Prompt Payment Act because Trumbull was not successful under the Act. In *Trumbull I*, the trial court determined that A & L satisfied all payment obligations under the Prompt Pay Act and that Trumbull's claim under the Act was barred. This court affirmed the decision stating "we affirm the trial court's decision that the claim on the bond is barred by the Prompt Pay Act...." *Trumbull I*, 768 A.2d at 371. Thus, because Trumbull was not successful in its claim under the Prompt Payment Act, it cannot recover under the Prompt Payment Act.

In accordance with the above, the order of the trial court is affirmed.

### ORDER

Now, July 2, 2002, the order of the Court of Common Pleas of Allegheny County at No. AR98–324, is affirmed.

---

5. Before addressing Trumbull's issue, we observe that the trial court incorrectly determined that the notice of appeal filed by Trumbull was untimely. The history of the case reveals that after the trial court entered a verdict in favor of Trumbull, both sides filed post-trial motions. All motions were denied in an order dated July 5, 2001. However, because of a clerical error, neither party received notice of the court's post-trial ruling until sometime after the 30–day window for filing an appeal had run. The trial court then granted A & L's petition to file notice of appeal nunc pro tunc in an order dated August 20, 2001. "That Notice was then timely filed by A & L on September 18, 2001. Then on October 2, 2001 this office received a Notice of Appeal from Trumbull. We regard the Notice as untimely." (R.R. at 157a.)

Although the trial court considered Trumbull's appeal as untimely, Pa. R.A.P. 903 provides that "if a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed ..." As Trumbull filed its appeal within 14 days of the A & L appeal, it was timely.