NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3307
_____

ORION DRILLING COMPANY, LLC,
                                        Appellant

v.

EQT PRODUCTION COMPANY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-16-cv-01516)
Chief Magistrate Judge: Honorable Maureen P. Kelly
_____

Argued July 2, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, *Circuit Judges*.

(Opinion Filed: August 28, 2020)

Andrew K. Fletcher [*ARGUED*]
Richard M. Weibley
Kevin M. Eddy
Blank Rome LLP
501 Grant Street
Suite 850
Pittsburgh, PA 15219
          *Attorneys for Appellant*

Nicolle R. Snyder Bagnell [*ARGUED*]
Colin E. Wrabley
Lucas Liben
Devin M. Misour
Alex G. Mahfood

Reed Smith LLP
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222
      *Attorneys for Appellee*

———————

OPINION[*]

———————

GREENAWAY, JR., *Circuit Judge*.

At the heart of this case is a contract dispute between two natural gas companies, Plaintiff-Appellant Orion Drilling Company, LLC ("Orion") and Defendant-Appellee Equitable Production Company ("EQT"). In short, due to safety concerns, EQT terminated two rig drilling contracts it had with Orion. As a result, EQT and Orion now dispute whether liquidated damages are or are not due to Orion. Orion believes that Exhibit A, section 7.3, found in both drilling contracts, sets forth the only method by which EQT could terminate the drilling contracts early without paying liquidated damages. EQT disagrees, claiming that per section 6.5, found in both drilling contracts, it is entitled to terminate early due to Orion's default and material breach. For example, EQT argues that Orion's failure to comply with industry standards or to meet safety polices relieves it of any obligation to make liquidated damages payments. Orion sued EQT for breach of contract, a jury found in favor of EQT, and the District Court upheld

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

that verdict. There are six issues on appeal, and for the reasons discussed below, we will affirm in toto.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background[1]

#### 1.     The Contracts

In 2014, Orion and EQT entered into four contracts regarding Orion's building and operation of two drilling rigs—Rig 17 and Rig 18—for EQT: a drilling contract for each rig and a construction contract for each rig. The Rig 17 and Rig 18 drilling contracts (collectively the "Drilling Contracts"), which are governed by Pennsylvania law, are of primary relevance to this dispute.[2] The Drilling Contracts each contain the essential provisions that control this dispute—section 6.5 and Exhibit A, section 7.3.[3]

---

[1] We note at the outset that the District Court's September 10, 2019 Opinion was very thorough, assiduously detailing the facts of this case, and we reference the opinion throughout. *See Orion Drilling Co. v. EQT Prod. Co.*, No. CV 16-1516, 2019 WL 4273861, at *1 (W.D. Pa. Sept. 10, 2019).

[2] Per the Drilling Contracts, using the rigs it would build and own, Orion would drill wells for EQT in exchange for specified payments per day. Also, per the Drilling Contracts, Orion had the sole obligation to ensure the safe operation of the rigs.

[3] Two other provisions with ancillary relevance are section 6.1 and section 6.4. Section 6.1 details the duration of each contract (*i.e.*, the respective terms for each rig), while section 6.4, which was amended, pertains to the "**Early Termination Compensation**" and directs one to "See 'Exhibit A, Other Provisions' Item 7.3." JA346, 381 (emphasis in the original); *see also Orion Drilling*, 2019 WL 4273861, at *2–4 (showing the stricken former section 6.4, located above section 6.5, which had described early termination compensation and provided for liquidated damages but now directs one to Exhibit A, section 7.3).

Section 6.5 pertains to "**TERMINATION**" and has two subsections regarding: (1) "**Project Termination for Default**," and (2) the rights EQT has "[i]n the event of a default by [Orion][.]" JA346, 381 (emphasis in the original); *see also Orion Drilling*, 2019 WL 4273861, at *3–4 (reproducing, for ease of reference, the Drilling Contracts' relevant provisions). Exhibit A, section 7.3 pertains to "Early Termination" and details how EQT can terminate the drilling contract early, for any reason, so long as liquidated damages are paid, unless three conditions are met.[4] JA355, 390; *see also Orion Drilling*, 2019 WL 4273861, at *4–5.

## 2. Rig Failures and EQT's Early Termination

In 2015, both Rig 17 and Rig 18 began drilling. Subsequently, there were four key dropped block incidents on Rig 18.[5] Three dropped blocks occurred on September 25,

---

[4] These three conditions permit EQT to terminate early per Exhibit A, section 7.3 without "pay[ing] an early termination amount" if any one of the conditions can be satisfied, for example, the second condition is if: "(b) [Orion] suffers involuntary or voluntary bankruptcy, is insolvent or subject to receivership or similar insolvency proceedings." JA355, 390; *see also Orion Drilling*, 2019 WL 4273861, at *4.

[5] "A dropped block is an uncontrolled descent of approximately 50,000 pounds of the drill's top drive, traveling block, and associated equipment in the mast[.]" *Orion Drilling*, 2019 WL 4273861, at *5 (citation and quotation marks omitted); *see also id.* at *5–6 (referencing evidence from trial detailing not only the "peril" of such incidents, which "raise significant safety concerns for the lives and well-being of any contractors or employees working on the drilling platform below," but also the "rarity" of even a single incident).
In addition to the dropped block incidents, there were also other safety concerns regarding both rigs—documented by EQT via letters to Orion—that EQT believed were "directly related to the [Integrated Drive Systems ("IDS")] or [were] premature equipment failures of critical components necessary to efficiently and safely execute [the] drilling program." JA3355; *see also Orion Drilling*, 2019 WL 4273861, at *6 (noting that each rig was equipped with the IDS control system); Appellee Br. 7 (explaining that

2015 ("Incident One"), October 10, 2015 ("Incident Two"), and June 7, 2016 ("Incident Three"). The fourth key dropped block occurred after EQT terminated the Drilling Contracts.

After each incident, there was correspondence between the two companies. *See generally Orion Drilling*, 2019 WL 4273861, at \*6–9 (providing a more detailed recount of the parties' communication). Of particular relevance are the following three interactions:

First, after Incident One, EQT sent a notice of default letter to Orion referencing section 6.5(1)(F) of the Rig 18 drilling contract, as well as the applicable cure period, and stressing that Orion needed to cure the problem "to EQT's satisfaction," JA3343.

Second, after Incident Two, EQT sent Orion a letter noting in part that due to Orion's failure to timely cure the block malfunction pursuant to the first notice of default—as evidenced by the occurrence of Incident Two—Orion was in default of the Rig 18 Drilling Contract per section 6.5 of the drilling contract.[6]

Third, after Incident Three, EQT sent Orion written notice that Rig 18 was to be shut down for "environmental, health and safety protection and due to material unsafe conditions," JA3396, after a "third party contractor on the drilling floor when the Rig

---

such systems "control the operation—indeed, every function—of drilling rigs, including ensuring that the rigs' blocks travel at a safe speed").

[6] After Incident Two, it was determined that an IDS "programming error had been entered into the control system" and that this error was "likely the cause" of both Incident One and Incident Two. *Orion Drilling*, 2019 WL 4273861, at \*6.

5

failed was nearly killed when the blocks landed inches away," *id.*, and noting that Orion was in default per subsections 6.5(1)(F) and 6.5(1)(H) of the Rig 18 drilling contract.[7]

The parties engaged in extensive communication regarding rig issues after each incident in an attempt to resolve these problems. *See, e.g.*, *Orion Drilling*, 2019 WL 4273861, at *6–9 (recounting in greater detail the parties' interactions). Relevant to this appeal, and in addition to EQT's three letters just discussed, is a letter agreement the parties' reached on June 16, 2016 (herein the "Letter Agreement"), after Incident Three occurred and EQT sent a shutdown letter.

In the Letter Agreement, the parties agreed to various conditions which "document[ed] the steps to be taken by Orion to address EQT's stated concerns for the safety of its employees and contractors." *Id.* at *8.[8] One of the conditions was that an independent safety engineering firm, Aberdeen Drilling Consultants, Ltd. ("ADC"), would conduct an investigation. After ADC investigated Rig 18 and "identified 11

---

[7] In this letter, EQT also "request[ed] that Orion perform a formal investigation and root cause analysis of this latest block dropping failure," noting that the "shut down and suspension of Rig [18] operations [would] continue until Orion" met certain conditions. JA3396.

[8] Additional agreements included the extension of the cure period specified in subsections 6.5(1)(F) and 6.5(1)(H) of the Rig 18 drilling contract to "July 9, 2016, or seven days after the written assessment described" later in the Letter Agreement was delivered, and the completion, by Orion, of any "additional repairs or preventative measures" that Aberdeen Drilling Consultants, Ltd. ("ADC") deems necessary for the "safe operation of" Rig 18, subject to the "satisfaction of EQT and ADC prior to the expiration of the extended cure period[.]" JA3402. The Letter Agreement also stated that: "Except as set forth herein, all terms and conditions of the Contract and any prior Amendments remain in force and in effect between the parties." JA3403. Orion refers to this Letter Agreement as the "Fourth Amendment to the Rig 18 Drilling Contract." Appellant Br. 9.

nonconformance issues and made several key conclusions that raised serious concerns with the safety of the hardware and software of the IDS control system," *id.* at *9, EQT proceeded to send four additional crucial letters to Orion. *See id.* (noting that ADC's report indicated that "even if [Orion did] everything" that ADC prescribed, there was still uncertainty regarding whether "the rig could operate safely" (alteration in the original) (citation and quotation marks omitted)).

First, EQT sent a letter to Orion shutting down Rig 17—as that rig relied on the same IDS control system as Rig 18. Next, EQT sent Orion a notice of default and breach letter for Rig 17 pursuant to both section 6.5 and Exhibit A, section 7.3 of the Rig 17 drilling contract. *See also id.* at *10 (detailing how this "notice identified 16 serious safety incidents on Rig 17, including erratic brake operation and at least one instance where the brakes did not engage, resulting in a dropped block."). Then, EQT sent Orion a termination letter for Rig 18.[9] And finally, EQT sent Orion a termination letter for Rig 17.[10]

## B. Procedural Background

Orion brought a two-count breach of contract complaint against EQT for the early termination of the Drilling Contracts in an attempt to recover liquidated damages payments. Orion asserted that EQT could not "terminate the contract before the end of

---

[9] This letter was sent on July 27, 2016.

[10] This letter was sent on September 12, 2016.

7

the contract term unless it [paid] the early termination payment as calculated under [Exhibit A, section 7.3.]" JA320, 321.[11]

Prior to trial, the District Court ruled that section 6.5 and Exhibit A, section 7.3 of the Drilling Contracts were unambiguous, alternative methods for terminating the Drilling Contracts.[12] *See, e.g.*, JA27 (explaining that the identical provisions in both Drilling Contracts "unambiguously allow EQT to terminate pursuant either to 6.5 or 7.3 of Exhibit A without the payment of any liquidated damages, and this is the plain meaning as set forth on that issue."). The District Court also ruled that Orion spoliated evidence, and accordingly gave an adverse inference spoliation instruction to the jury during trial.

At the conclusion of the trial, a jury returned a verdict in favor of EQT. The jury found that EQT did not breach the Rig 18 drilling contract, did breach the Rig 17 drilling contract by terminating "early and failing to pay the early termination fee," JA1322, but that Orion had materially breached the Rig 17 drilling contract, that the material breach was subject to cure, and that Orion failed to timely cure.

On February 1, 2019, the District Court entered final judgment on the jury verdict. On February 28, 2019, Orion filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, as well as a renewed motion for judgment as a matter of law pursuant

---

[11] Exhibit A, section 7.3 provides details on how liquidated damages would be calculated if early termination occurred per that provision. *See, e.g.*, *Orion Drilling*, 2019 WL 4273861, at *4 (reproducing Exhibit A, section 7.3).

[12] We note here that the parties consented to trial before a magistrate judge. *See* CM/ECF No. 126; *see also* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

to Federal Rule of Civil Procedure 50(b). On September 10, 2019, the District Court entered an Opinion and Order denying Orion's February 28, 2019 motions, as well as an Opinion and Order granting EQT's Motion for Attorney's Fees and Costs, pursuant to section 7.15 of the Drilling Contracts. On October 7, 2019, Orion filed a timely Notice of Appeal, appealing the two September 10, 2019 orders.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's construction of a contract, for example, its finding that a contract is unambiguous, de novo. *See Nat'l Football League Players' Concussion Injury Litig.*, 923 F.3d 96, 107 n.8 (3d Cir. 2019) ("[C]ontract construction, that is, the legal operation of the contract, is a question of law mandating plenary review" (citation omitted)); *see also Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 528 (3d Cir. 2018) ("Under our case law, contract interpretation is a question of fact reviewed for clear error and contract construction is a question of law reviewed *de novo*. . . . [W]e review *de novo* the text of the [contract] to determine whether we agree with the District Court that it is unambiguous.").

We review the "legal standard enunciated in a jury instruction" de novo, and its "expression" for an abuse of discretion. *United States v. Lee*, 359 F.3d 194, 203 (3d Cir. 2004) (citation omitted). We will consider whether, as a whole, the instruction "apprized the jury of the issues and the applicable law." *Id.* (citation omitted). Further, harmless instructional errors that do not prejudice a party are insufficient for a judgment to be

9

vacated and for a new trial to be ordered. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 245–46 (3d Cir. 2006). An error is harmless "if it is highly probable that the error did not affect the outcome of the case. . . . High probability requires that the court have a sure conviction that the error did not prejudice the defendant, but need not disprove every reasonable possibility of prejudice." *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 88 (3d Cir. 2019) (citations and quotation marks omitted).

We review an order granting or denying a motion for judgment as a matter of law de novo, "apply[ing] the same standard as the district court." *In re Lemington for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (citation omitted). Our review of a district court's denial of a renewed motion for judgment as a matter of law is highly deferential, reviewing the record in the light most favorable to the non-moving party, and granting the motion only if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *See id.* (citation omitted). Reversal, in instances where the party with the burden of proof files a renewed motion for judgment as a matter of law, "is reserved for . . . extreme circumstances[.]" *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990).

Finally, evidentiary rulings are reviewed for an abuse of discretion, unless the district court's evidentiary rulings are based on a legal interpretation of the Federal Rules of Evidence, in which case our review is de novo. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). "Sanctions for spoliation of evidence are [also] reviewed for an abuse of discretion." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). "An abuse of discretion occurs only where the district court's decision is arbitrary,

10

fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the district court's view." *Green*, 617 F.3d at 239 (citation and quotation marks omitted). If there were errors regarding the "admission or exclusion of evidence" reversal or a new trial is only warranted if the errors were harmful, *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995), and "[a]n erroneous evidentiary ruling will be considered harmless if it is highly probable that the district court's ruling did not affect the party's substantial rights," *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 251 (3d Cir. 2008) (citation, quotation marks, and alterations omitted).

## III.   ANALYSIS

There are six issues on appeal. The first three issues arise from the District Court's rulings and subsequent jury instructions pertaining to: (1) the Drilling Contracts' operative provisions, (2) material breach, and (3) proof of performance. The fourth issue concerns (4) the denial of Orion's renewed motion for judgment as a matter of law. The final two issues address evidentiary rulings and jury instructions concerning (5) the preclusion of certain evidence and (6) spoliation. For the reasons provided below, we find no error in any of the District Court's rulings.

### A.     The Three Contract Rulings and Subsequent Jury Instructions

#### 1.     Section 6.5 and Exhibit A, section 7.3 of the Drilling Contracts are unambiguous and provide two alternative methods for termination.

The District Court correctly found, and thus instructed the jury, that section 6.5 and Exhibit A, section 7.3 of the Drilling Contracts are each unambiguous. Each sets forth separate and harmonious conditions under which the Drilling Contracts could be

11

terminated without payment of liquidated damages.  As such, Orion's contention that Exhibit A, subsections 7.3(a)–(c) set forth the *only* permissible way for EQT to terminate the Drilling Contracts early without having to pay liquidated damages is incorrect.[13]

---

[13] During oral argument, Orion implied that the Rig 18 Letter Agreement's force and effect is at issue here, suggesting that EQT had failed to abide by its specific cure period.  *See* Oral Argument at 04:35–06:10, 11:11–12:35, 13:15–15:57 (July 2, 2020), https://www2.ca3.uscourts.gov/oralargument/audio/19-3307_OrionDrillingCov.EQTProductionCo.mp3; *see also id*. at 16:32–19:20 (arguing that there is ample evidence supporting the failure of Orion to cure within the Letter Agreement's cure period).

Orion's appellate briefing makes only "passing reference[s]" to the Letter Agreement, and "[w]e have held on numerous occasions that an issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004) (citation, quotation marks, and alteration omitted).  Rather, Orion's appellate briefing is centered on the controlling nature of Exhibit A, section 7.3, how that provision is the sole means by which EQT could terminate the contract early, and how section 6.5 does not permit the avoidance of liquidated damages payments.  *See, e.g.*, Appellant Br. 22.  Orion thus forfeited the argument that the operative provision, and the provision breached by EQT, was the Letter Agreement.  *See also Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 464 (2019) (explaining the difference between forfeiture and waiver).

Factually though, entertaining Orion's oral argument suggestion that EQT failed to abide by the Letter Agreement's cure period—an argument separate and apart from the controlling nature of either Exhibit A, section 7.3 or section 6.5—per the Letter Agreement, the cure period was extended to either "5:00pm on July 9, 2016 or seven days after the written assessment described in paragraph 2 is delivered to Orion, whichever date is later." JA3402.  ADC's report was sent to Orion on July 8, 2016.  Thus, per the Letter Agreement, the cure period would have extended until seven days after July 8, 2016.  EQT terminated the Rig 18 drilling contract on July 27, 2016.  The termination letter was thus sent after expiration of the Letter Agreement's cure period, and as the District Court noted in its discussion of its jury instruction pertaining to the Letter Agreement—an instruction that is also not one of the issues on appeal—"there was sufficient evidence regarding EQT's dissatisfaction with Orion's attempts to cure ADC-identified defects[.]" *Orion Drilling*, 2019 WL 4273861, at *24.  As the Letter

Pennsylvania contract law is clear, "unambiguous [contracts] are construed by [courts] as a matter of law." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009). "A contract is *ambiguous* if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 483 (citation omitted) (emphasis added). Whereas, "[w]hen the words of a contract are clear and *unambiguous*, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning." *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (Pa. 2012) (emphasis added); *see also Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (emphasizing that the entire contract must be considered to ascertain the parties' intent, and that extrinsic evidence may only be considered to determine intent when there is an ambiguity); *id.* ("Courts do not assume that . . . the parties were ignorant of the meaning of the language they employed."). Further, specific provisions, as opposed to general provisions, "are more likely to reflect the intent of the parties," *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 350 (3d Cir. 2018) (citation omitted), and "[a]bsent fraud or unconscionability, courts should not set aside terms on which

---

Agreement made clear, any "repairs or preventative measures" that ADC identified, had to be completed "to the satisfaction of EQT and ADC[.]" JA3402.

Additionally, though separate, in its appellate briefing, Orion also asserted that EQT's conduct demonstrated that it never believed that it could terminate the Drilling Contracts early without liability for liquidated damages payments. Not only was this argument waived by Orion, *Robinson*, 920 F.3d at 187, but also the District Court noted the sufficient "evidence at trial permit[ing] the jury to find that the parties, both sophisticated entities, operated with the understanding that the default provision set forth at Section 6.5 remained in effect," *Orion Drilling*, 2019 WL 4273861, at \*14.

sophisticated parties agreed," *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 708 (Pa. Super. Ct. 2003).

Here, it is clear that section 6.5 and Exhibit A, section 7.3 are unambiguous, reasonably serving two separate purposes. *TruServ*, 39 A.3d at 260. On the one hand, section 6.5 permits EQT to terminate a drilling contract when Orion *is in default*, and it includes no mention of liquidated damages. *See Orion Drilling*, 2019 WL 4273861 at *3–4 (reproducing the contract language). On the other hand, Exhibit A, section 7.3, permits EQT to terminate the Drilling Contracts *at any time*, so long as liquidated damages are paid, or, if one of three conditions are met, without payment. *Id.* at *4–5.

Based on the language of the Drilling Contracts and the entire agreement taken as whole, it is evident that these sophisticated parties intended for section 6.5 and Exhibit A, section 7.3 to be independent provisions that work together harmoniously. *See Engelhard Corp. v. N.L.R.B.*, 437 F.3d 374, 381 (3d Cir. 2006) (reiterating "the well established principles of contract construction—to read, if possible, all provisions of a contract together as a harmonious whole"); *Vasilis v. Bell of Pa.*, 598 A.2d 52, 54 (Pa. Super. Ct. 1991) (explaining that sophisticated parties can be experienced businesses that have equal bargaining power when entering into a contract).[14]

---

[14] Further supporting this reading is that the parties struck from the Drilling Contracts sections 6.3 and 6.4—sections that had pertained to early termination—added Exhibit A, section 7.3, and kept section 6.5, indicating the parties were *not* ignorant of the existence of these provisions or their intended meaning. *See Orion Drilling*, 2019 WL 4273861, at *2–5 (reproducing the contract language); *Murphy*, 777 A.2d at 429; *Conomos*, 831 A.2d at 708; *see also LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009) ("[W]e will not interpret one provision of a contract in a manner which results in another portion being annulled.").

The District Court's legal conclusion and subsequent jury instruction—*i.e.*, that the Drilling Contracts contained two alternative contractual provisions by which EQT could terminate, and that early termination per section 6.5 did not require liquidated damages payments—was thus correct and not a misstatement of law or an abuse of discretion. *See Nat'l Football League*, 923 F.3d at 107 n.8; *Lee*, 359 F.3d at 203.

### 2. The material breach jury instruction was legally correct and not an abuse of discretion.

The District Court's ruling, the jury instruction, and the special verdict form regarding material breach were legally correct, and there was neither an abuse of discretion nor a harmful error. Under Pennsylvania law, "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *LJL*, 962 A.2d at 652. Indeed, in *LJL*, the court found that while paragraph 23(c) of an agreement was a notice and cure provision, it was "not the *exclusive* means by which the agreement could be terminated," as paragraph 30 was "an *express reservation . . .* of the right to exercise all remedies available . . . after a breach," which inherently included the "power to terminate the contract without notice in the event of a vital and essential breach." *Id.* (emphasis added).

Here, the Drilling Contracts do not contain an "explicit" or "exclusive" provision, which would preclude EQT from seeking redress from other remedies available at law. *Id.* This is so because, as the District Court determined prior to trial, subsection 6.5(2)(C)

15

of the Drilling Contracts "preserve[d] the ordinary remedy of termination without notice or cure, where there is a breach of contract going directly to the essence of the contract, which is so exceedingly g[r]ave as to irreparably damage the trust between the contracting parties."  JA30 (citation and quotation marks omitted); *see also Orion Drilling*, 2019 WL 4273861, at *3–4 (reproducing subsection 6.5(2)(C): "In the event of a default by [Orion] . . . [EQT] shall have the right . . . [t]o pursue any other remedy provided under this Contract or available at law or equity.").

The language of subsection 6.5(2)(C) is plain, preserving "any other remedy" that is "available at law or equity," *Orion Drilling*, 2019 WL 4273861, at *4, which includes the remedy of termination without notice or cure, so long as there is a material breach going to the essence of the contract, as is articulated in *LJL*, *see* 962 A.2d at 651–52. Therefore, the District Court was correct in determining that per *LJL*, if there were a material breach, EQT would have been relieved of its notice and cure obligation due to the existence of subsection 6.5(2)(C) and the non-exclusive nature of the notice and cure provisions.  Thus, the District Court's jury instruction was itself legally correct, and not an abuse of discretion.  *Lee*, 359 F.3d at 203.  Likewise, the special verdict form asking the jury to determine if Orion materially breached either the Rig 17 drilling contract or the Rig 18 drilling contract, and whether, if a material breach occurred, a cure period was required, was also legally correct.  *See id.*[15]

---

[15] Further, in the alternative, if there were an error here, it was harmless.  *See Murray v. United of Omaha Life Ins. Co.*, 145 F.3d 143, 156–57 (3d Cir. 1998); *see also Armstrong*, 438 F.3d at 245–46.  First, the jury did not decide whether the Rig 18 drilling contract was materially breached by Orion because it determined that EQT did not breach

16

### 3. The proof of performance jury instruction was correct and not an abuse of discretion.

The District Court's proof of performance jury instruction was legally correct and not an abuse of discretion. Under Pennsylvania law, a plaintiff suing for breach of contract must establish that there was a contract, a breach, and damages. *See McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010). Further, though, "[w]hen a party to a contract seeks to enforce the agreement or to recover damages for breach of the agreement, that party must prove that he has performed all of his own obligations under

---

that contract by terminating early. Second, though the jury did find that Orion was in material breach of the Rig 17 drilling contract, it likewise found that the Rig 17 drilling contract *was* subject to a cure period, but that Orion failed to timely cure. *See Murray*, 145 F.3d at 156–57; *see also, e.g. Orion Drilling*, 2019 WL 4273861, at *19 (noting that despite Orion's characterization of its actions as merely "poor performance" the jury was entitled to determine, and in fact did determine, that Orion's conduct *and failure to cure*, despite repeated representations that it had cured, the IDS control system, amounted to more than mere poor performance). Thus, the jury's own finding vitiated any concern that the potentially erroneous material breach instruction had absolved EQT of providing a necessary cure period, as the jury found said cure period had been provided.

Additionally, Orion's contention that only fraudulent conduct supports a finding of material breach is unsupported by case law. For example, Orion references *Milton Regional Sewer Authority v. Travelers Casualty & Surety. Co. of America* for support, however, that non-precedential case only notes that a "typical example" of material breach is "fraud," thus in no way conclusively holding fraud is necessary. 648 F. App'x 215, 217 (3d Cir. 2016).

Orion's additional claims that EQT failed to preserve a material breach argument by not immediately terminating the Drillings Contracts and by failing to argue material breach as an affirmative defense are also incorrect. First, the law does not require immediate termination, especially where a party's conduct does not amount to acceptance of a breach. *Gillard v. Martin*, 13 A.3d 482, 488–89 (Pa. Super. Ct. 2010). EQT's notice of default letters cannot be construed as acceptance of default, but rather as warnings to Orion. Further, EQT arguably pled and raised material breach throughout trial. *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991); *see also Orion Drilling*, 2019 WL 4273861, at *18. Thus, EQT did not waive a material breach argument.

17

the contract." *Trumbull Corp. v. Boss Constr., Inc.*, 801 A.2d 1289, 1292 (Pa. Commw. Ct. 2002) (quoting *Nikole, Inc. v. Kliner*, 603 A.2d 587, 593 (Pa. Super. Ct. 1992)); *see also Cimina v. Bronich*, 537 A.2d 1355, 1358 (Pa. 1988) (holding that "only *material* failure of performance by one party discharges the other party . . . an immaterial failure does not operate as such a discharge" (omission in original) (emphasis added) (citation omitted)).

Here, the Drilling Contracts imposed obligations on Orion, as well as EQT. *See, e.g.*, *Orion Drilling*, 2019 WL 4273861, at *3 (reproducing subsections 6.5(1)(F) and 6.5(1)(H) of the Drilling Contracts, which respectively find Orion in default if it "[f]ail[s] to comply with requirement[s] or material provision[s] of [the Drilling Contracts] in accordance with industry standards" and "[c]ontinuously violate[s] [EQT's] safety, environmental, controlled substances or other applicable rules and policies in any material respect"). Thus, Orion not only had to establish the elements of its breach of contract claim but also proof of its own performance, to show that it was not in default. *See McShea*, 995 A.2d at 340; *Trumbull Corp.*, 801 A.2d at 1292.

The District Court's jury instruction was thus both legally correct and not an abuse of discretion. *Lee*, 359 F.3d at 203. Additionally, even if, in the alternative, the jury instruction were erroneous, Orion experienced no substantial prejudice. *See, e.g.*, *Orion Drilling*, 2019 WL 4273861, at *20 (explaining the overwhelming evidence supporting the jury's verdict, and "Orion's repeated failure to cure the defective IDS control system and its false representations that the control system was safe for continued drilling

18

operations"); *see also GN Netcom*, 930 F.3d at 88 ("We will not reverse if the District Court's error was harmless . . . .").

## B. The District Court Did Not Err in Denying Orion's Renewed Motion for Judgment as a Matter of Law

The District Court's denial of Orion's renewed motion for judgment as a matter of law was proper. *See* Fed. R. Civ. P. 50(b); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (explaining that a Rule 50(b) motion should only be granted when "viewing the evidence in the light most favorable to the nonmovant . . . there is insufficient evidence"). Here, there was ample evidence upon which the jury could have properly based its verdict. *Id.*; *see also In re Lemington*, 777 F.3d at 626.

In addressing the renewed motion, the District Court thoroughly recounted the evidence presented at trial supporting the jury's findings regarding both Rig 17 and Rig 18. *See Orion Drilling*, 2019 WL 4273861, at *13–17. Specifically, regarding Rig 18, the jury heard sufficient evidence that Orion was in default per section 6.5 of the Rig 18 drilling contract, failing to comply with industry standards and cure. *See id.* at *15 (recounting evidence adduced at trial).[16] Regarding Rig 17, the jury also heard sufficient evidence that Orion materially breached the Rig 17 drilling contract and failed to cure the IDS control system responsible for the overarching safety problems on both rigs within the allotted time period after notice from EQT, such that EQT was relieved of its

---

[16] Orion's belief that it complied with the terms of the Letter Agreement ignores that that "there was sufficient evidence regarding EQT's dissatisfaction with Orion's attempts to cure" pursuant to the Letter Agreement. *Orion Drilling*, 2019 WL 4273861, at *24.

19

contractual obligations to Orion.[17] *Id.* at \*15–16; *see also Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. Ct. 2003) ("[M]aterial breach by one party to a contract entitles the non-breaching party to suspend performance"); *see also LJL*, 962 A.2d at 652 (excusing one party's compliance with notice and cure provisions in a contract if said provisions are not exclusive, and so long as the other party has materially breached the contract). As such, the record in this case is not "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991) (citation omitted). The District Court correctly denied Orion's renewed motion for judgment as a matter of law. *Orion Drilling*, 2019 WL 4273861, at \*17; *Lemington*, 777 F.3d at 626.

## C. The District Court's Evidentiary Rulings

The District Court did not abuse its discretion in either of its evidentiary rulings— *i.e.*, (1) its preclusion of certain evidence, and (2) its spoliation determination and adverse inference instruction.

### 1. Evidence Preclusion

The District Court's preclusion of two irrelevant categories of evidence does not constitute an abuse of discretion. Evidence must be relevant to be admitted at trial. *See* Fed. R. Evid. 401, 402; *see also* Fed. R. Evid. 403 (excluding "relevant evidence if its

---

[17] Orion's contention that its poor performance did not amount to material breach misstates the evidence from trial, which showed more than mere poor performance, but its inability to "consistently . . . meet an agreed-upon level of care, and [its] repeated[] fail[ure] to cure identified deficiencies." *Orion Drilling*, 2019 WL 4273861, at \*16; *see also id.* (detailing the evidence the jury heard about Rig 17's failures and similarities to Rig 18).

20

probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

Here, the two categories of evidence Orion sought to introduce were not relevant. One category pertained to EQT's purported financial motivations for terminating the Drilling Contracts (*i.e.*, Orion believed EQT's financial motives showed a lack of good faith), and the other category pertained to the amount of money Orion spent building the rigs. Neither category of evidence supported Orion's breach of contract claims. *See, e.g.*, *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1058 (Pa. Super. Ct. 1992) (explaining that a party's "[i]ll will or malice is not an element of a cause of action for breach of contract and . . . is extraneous to recovery for breach of contract"); *see also John B. Conomos, Inc.*, 381 A.2d at 707 n.6 (noting that a party's motive "is not controlling in causes of action under contract law"); *Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 162 (Pa. Super. Ct. 1997) (explaining that where there are proper liquidated damages provisions in a contract a party "cannot later claim entitlement to actual damages").

Though Orion claims the economic motivation evidence was relevant to show EQT's bad faith motive in terminating the Drilling Contracts, the economic motivation evidence was not only, as the District Court described it, "scant," but also had "no

21

apparent relevance whatsoever." JA2314.[18]  As such, it was not unreasonable for the District Court to determine that "the proffered [economic motivation] evidence . . . does not tend to prove or disprove the existence or the terms o[f] a breach of the contract that is at issue, nor does it bear on the question of whether the safety violations existed such that EQT had the right to find that Orion was in material breach." JA2314.  Similarly, Orion's evidence regarding its own investment in building the rigs did not make its breach of contract claims "more or less probable."  Fed. R. Evid. 401.

As the District Court noted, this case was not concerned with the Rig 17 and Rig 18 construction contracts, and reference to Orion's investments in the rigs was "not appropriate nor warranted," as it was irrelevant to the breach of contract claims.  JA2361; *see also Orion Drilling*, 2019 WL 4273861, at *26.[19]  The District Court's determination that these two categories of evidence were not relevant to Orion's breach of contract claims was not unreasonable and does not constitute an abuse of discretion.  *See Green*, 617 F.3d, at 239.[20]

---

[18] For example, deposition testimony from Orion's CEO illustrates the lack of concrete evidence Orion had regarding EQT's alleged economic motivation for termination.

[19] Orion's argument that EQT "consistently argue[d]," Appellant Br. 47, that Orion would suffer no financial hardship is also belied by the record.  *See, e.g.*, JA2198.

[20] To the extent the District Court's evidentiary rulings relied on its interpretation of the Federal Rules of Evidence, there was no legal error in said interpretation.  *See Green*, 617 F.3d at 239.

22

### 2. Spoliation

The District Court's spoliation finding and adverse inference instruction do not constitute an abuse of discretion. *Bull*, 665 F.3d at 73. Spoliation of evidence occurs where: (1) "the evidence was in the party's control," (2) "the evidence is relevant to the claims or defenses in the case," (3) "there has been actual suppression or withholding of evidence," and (4) "the duty to preserve the evidence was reasonably foreseeable to the party." *Id.* "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* at 79 (citation omitted). "[A] finding of bad faith is pivotal to a spoliation determination." *Id.*

Here, the spoliated evidence pertained to the handwritten notes of one Orion employee, Jamie Garza, and the handwritten notes and copies of marked-up contracts of another Orion employee, Owen Brandt. Both employees were operations managers and superintendents who oversaw the operation of both rigs. Garza, prior to changing positions and office locations a few days before the present lawsuit was filed, threw away certain notes, which he categorized as "junk." JA5. Brandt, Garza's supervisor, prior to leaving Orion's Pennsylvania office, also interestingly took certain "stuff" with him and left the "rest" behind. JA9. Orion was unable to produce the handwritten notes of both employees, and the copies of marked-up contracts that EQT surmised Brandt likely possessed.

There is no doubt that the evidence in question was in Orion's control. *Bull*, 665 F.3d at 73. The relevance of the documents—documents pertaining to the two rigs, some

23

marked-up with notes by Orion employees tasked with overseeing said rigs—is likewise clear. *Id.* Further, Garza's own deposition testimony—that he threw some documents away the day before Orion filed suit—supports the conclusion that there was an intentional destruction of certain documents that were foreseeably relevant to Orion's forthcoming lawsuit against EQT. *Id.*; *see also* JA8 ("Garza had knowledge that a dispute had arisen between the parties, that a lawsuit was about to be filed and he destroyed certain documents relative to operations of the two rigs at issue. This intentional action is sufficient to satisfy the element of bad faith."). And though Brandt's intentional throwing away of documents is less clear, it is clear that he took certain documents with him, leaving the rest behind with Orion, and that Orion was unable to produce hardcopies of the documents requested by EQT, related to the rigs in question, and relevant to the lawsuit brought by Orion.

Further, as the District Court found, at the time Brandt left in 2015, "it was reasonably foreseeable [due to operational incidents on Rig 17 and Rig 18, which had already occurred] that Orion had a duty to preserve the documents of this key employee." JA11. Thus, the District Court's finding that Orion's failure to produce these documents included both intentional destruction and bad faith failure to preserve, was not unreasonable. *See Orion Drilling*, 2019 WL 4273861, at *32 ("Under the circumstances presented, and giving consideration to the subject matter of the notes and timing of anticipated and threatened litigation . . . the [District] Court found that EQT met its burden of proving that Orion had acted in bad faith with regard to the willful spoliation or

24

failure to preserve evidence in the possession of two key employees."); *see also Bull*, 665 F.3d at 73.[21]

Similarly, the District Court reached a reasonable conclusion regarding "Orion's relative fault in failing to preserve evidence regarding Rigs 17 and 18 in the possession of its most senior operations personnel[.]" *Orion Drilling*, 2019 WL 4273861, at \*33. It noted the questionable "timing of when the documents were 'lost,'" *id.*, and explained the "[f]actors favoring the adverse inference instruction,"—*i.e.*, the "lost" evidence that "would have buttressed EQT's contention that the control system defects were known and remained uncured through the date of termination, as well as the likelihood that Orion understood the continued viability of Section 6.5 of the contract," *id.—*that supported its finding. The District Court's permissive[22] and tailored adverse inference instruction was reasonable and not an abuse of discretion. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (providing the three factors to consider

___

[21] Orion's assertion that the District Court precluded it from presenting rebuttable evidence is an inaccurate recount of the trial, as Orion was permitted to play, and indeed played, the deposition testimony of both Garza and Brandt. *See also Orion Drilling*, 2019 WL 4273861, at \*32 ("[T]he Court permitted Orion to present testimony regarding the circumstances of how the documents were purportedly 'thrown away' to rebut the inference that the destruction was intentional"). In its appellate briefing, Orion never explicitly described what evidence it sought to introduce to rebut the spoliation findings, but alludes to presenting an affidavit from Garza containing points regarding his deposition testimony.

[22] There is no question that the adverse inference instruction was permissive as opposed to mandatory, giving the jury the option to decide whether the "evidence not preserved or destroyed . . . was relevant," as well as the option to decide if that evidence "would have been unfavorable to Orion and favorable to EQT," and whether such a finding was even "important . . . in reaching [the] verdict." *See* JA1597–1598; *see also* JA1602.

when determining the appropriateness of a spoliation sanction); *see also GN Netcom*, 930 F.3d at 83 (noting that a "permissive adverse inference instruction" is a "lesser sanction").

## IV.    CONCLUSION

For the reasons set forth above, we will affirm the District Court's September 10, 2019 Orders.